IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| QUANERICK SWIM and KALINDA SWIM, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:11-CV-1240-M |
| BANK OF AMERICA, N.A., BAC HOME LOANS SERVICING, LP and FEDERAL HOME LOAN MORTGAGE CORPORATION, | § § § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss [Docket Entry #4]. For the reasons explained below, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

On November 19, 2003, Plaintiffs purchased real property in Dallas, Texas (the "Property") and financed the purchase by obtaining a loan from Countrywide Home Loans, Inc. (the "Original Note"), and executing a note secured by a Deed of Trust. On December 19, 2006, Plaintiffs refinanced their home, and executed a new note to Countrywide (the "New Note"), secured by a new Deed of Trust ("New Deed of Trust").[1] The New Deed of Trust names Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary,[2] but the New Note makes no reference to MERS. Plaintiffs allege the New Note was assigned to Bank of America, N.A. ("BOA"), and that the Note's servicer was BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing L.P. ("BAC"). Defendants provide evidence that on

---

[1] Original Pet. Exh. A.
[2] Defs.' App. Exh. 2.

August 7, 2009, MERS assigned its interest in the Deed of Trust to **BAC**.[3]  Plaintiffs allege, but offer no proof, that MERS assigned its interest to **BOA**.[4]

In 2009, Plaintiffs fell behind in their mortgage payments and, in July or August of 2009, they were sent a notice of default.  Plaintiffs claim they contacted BOA and attempted to pay three months of their five overdue mortgage payments. They claim BOA initially refused to accept the payments, but then accepted one month's payment.  BOA's representative allegedly told Plaintiffs that BOA would not foreclose if Plaintiffs paid all five overdue payments or applied for a loan modification.  Plaintiffs claim BOA's representative advised them that (1) BOA would send Plaintiffs the loan modification information and that if it needed more information, it would contact them, (2) that Plaintiffs should not make more payments during the loan modification process, and (3) that BOA would not foreclose during the loan modification process.[5]

Plaintiffs allege that on August 11, 2010, they received a letter from BOA, dated July 6, 2010, requiring them to submit certain documents by July 21, 2010.  Plaintiffs maintain they already submitted such documents, but when they called, BOA told them it had not received the documents and to resubmit them.  Plaintiffs say they did so.  On September 24, 2010, Plaintiffs received a letter from BOA requesting a signed copy of Plaintiffs' tax return, which Plaintiffs allege was the first time such had been requested.  The Plaintiffs were directed to send the return by October 24, 2010.  Plaintiffs contend BOA stated foreclosure would not occur during the evaluation of Plaintiffs' loan under the federal government's Home Affordable Modification Program (HAMP) review. Plaintiffs provided the return.[6]  Plaintiffs claim that on November 16,

---

[3] Defs.' App. Exh. 2.
[4] Original Pet. ¶13.
[5] Original Pet. ¶13.
[6] Original Pet. ¶17.

2010, Plaintiffs received another letter from BAC and BOA, confirming they had received and were reviewing Plaintiffs' financial information, and stating that Plaintiffs would hear from them within ninety days. On December 1, 2010, Plaintiffs received a letter from BOA and BAC, stating that Plaintiffs' loan modification under HAMP was denied, because Plaintiffs had failed to submit requested documents. Plaintiffs again called BOA, contending the representative "assured Plaintiffs once again to ignore the foreclosure letters because BOA does not foreclose during the loan modification process."[7]

On December 9, 2010, BOA and BAC sent another letter to Plaintiffs, stating what additional documents were needed for Plaintiffs to be considered for a "trial modification." Plaintiffs allege those documents had already been provided. The letter required Plaintiffs to provide, within 10 days of the letter, proof they had submitted the information. Within that 10-day period, Plaintiffs informed BAC that they had already sent the requested information, and a BAC employee verified receipt of the documents. Plaintiffs later resent the documents as well.[8]

On February 1, 2011, BOA and BAC sold the Property to Federal Home Loan Mortgage Corporation ("Freddie Mac"). Plaintiffs claim the price was significantly less than the market value of the Property. When Plaintiffs contacted BOA about the foreclosure, BOA allegedly informed Plaintiffs that their loan modification application had expired due to their failure to provide the requested financial information. Plaintiffs responded that they had provided all information requested. The BOA employee told Plaintiffs it had tried to call the Plaintiffs, and left them phone messages, but the phone number it claims to have used was not Plaintiffs' number.[9]

In February 2011, Plaintiffs received a letter from Freddie Mac's attorneys, offering

---

[7] Original Pet. ¶19.
[8] Original Pet. ¶20.
[9] Original Pet. ¶21.

relocation assistance. Plaintiffs responded by phone, describing their loan modification attempts. Plaintiffs claim they spoke with Freddie Mac's agent, "Josh," who Plaintiffs say informed them that he "was submitting an escalation request for review of Plaintiffs' loan modification documents and he canceled the eviction proceedings." In March of 2011, Josh allegedly contacted Plaintiffs, informing them that BOA was reviewing their loan modification documents again, and if modification was approved, Freddie Mac would "deed the property back to BOA." Josh allegedly confirmed he had Plaintiffs' correct contact information.[10]

Around April 22, 2011, Plaintiffs received from Freddie Mac's attorneys a notice to vacate the property. Plaintiffs contacted Josh, who told Plaintiffs their loan modification had been denied for failure to provide "a profit and loss statement and recent quarterly earnings." Plaintiffs maintain such information had never been requested from them.[11]

On May 16, 2011, Plaintiffs filed suit in state court, alleging breach of contract, anticipatory breach of contract, violations of the Texas Consumer Credit Code and the Texas Debt Collection Practices Act, unreasonable collection efforts, negligent misrepresentations, gross negligence, and trespass to try title. Plaintiffs seek to quiet title and also seek injunctive relief to prevent their eviction, treble and punitive damages, a declaratory judgment, an accounting, and attorney's fees. On June 9, 2011, Defendants removed the case to this Court and then moved to dismiss Plaintiffs' claims.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an

---

[10] Original Pet. ¶22.
[11] Original Pet. ¶23.

unadorned accusation devoid of factual support.[12] While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."[13] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[14] Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief.[15]

### III.   ANALYSIS

#### A. Evidence Before the Court

Generally, in considering a motion to dismiss under Rule 12(b)(6), the Court "must limit itself to the contents of the pleadings, including attachments thereto."[16] If the Court is presented with matters outside the pleadings and does not exclude them, "the motion must be treated as one for summary judgment [and] . . . [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[17] However, the Fifth Circuit has recognized "one limited exception" to this rule.[18] Under that exception, "'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'"[19] For the exception to apply, the document(s) must be

---

[12] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), 129 S. Ct. 1937, 1949 (citations omitted).
[13] *Id.* at 1949-50 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[14] *Twombly*, 550 U.S. at 570.
[15] Fed. Rule Civ. P. 8(a)(2); *Iqbal*, 129 S. Ct. at 1950.
[16] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[17] Fed. R. Civ. P. 12(d); *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).
[18] *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).
[19] *Collins*, 224 F.3d at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.3d 429, 431 (7th Cir. 1993)). This exception is a natural extension of Rule 10(c), which states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Because such documents are considered part of the pleadings, they are not "matters outside the pleadings" that trigger conversion to a motion for summary judgment under Rule 12. *See* Fed. R. Civ. P. 12(d).

(1) attached to a defendant's motion to dismiss, (2) referred to in the plaintiff's complaint, and (3) central to the plaintiff's claims.[20]

Defendants provide the New Deed of Trust, the assignment from MERS to BAC of August 7, 2009, and the Substitute Trustee's Deed of February 1, 2011. Each is referred to in Plaintiffs' Original Petition and each is central to Plaintiffs' claims. Therefore, the Court considers such evidence as part of Plaintiffs' pleadings.

### B.  Breach of Contract

#### 1.  Split of the Note and Deed of Trust

Plaintiffs allege that when MERS transferred the New Deed of Trust to BAC, the New Note and the New Deed of Trust had different owners, and thus BAC and/or BOA never obtained the right under the Note to accelerate and foreclose on the Property. They argue that an assignment of the Deed of Trust separate from the Note has no effect. However, the New Deed of Trust names MERS as the beneficiary and nominee for Countrywide and its successors and assigns, and also states that MERS has the right to foreclose and sell the Property.[21] MERS assigned the New Deed of Trust to BAC.[22]

Under the express language of the New Deed of Trust, MERS is a beneficiary and nominee for both the originating lender and its successors and assigns, creating authority for a party holding only a deed of trust, and not the underlying obligation, to foreclose.[23]

Under Texas law, where, as here, a deed of trust grants a party the power of sale, that is valid.[24] MERS was the nominee for Countrywide and its successors and assigns. It thus had the

---

[20] *Kaye v. Lone Star Fund V (U.S.) L.P.*, No. 3:09–cv–2263–M, 2011 WL 1548967, at *9 (N.D. Tex. Apr. 26, 2011).
[21] Defs.' App. 3-4.
[22] Defs.' App. 19.
[23] See Restatement (3d) of Property (Mortgages) § 5.4, cmt. e.
[24] *Athey v. MERS,* 314 S.W.3d 161, 166 (Tex. App.—Eastland 2010, pet. denied).

authority to transfer its rights and interests in the New Deed of Trust to BAC, and BAC then had the right to foreclose, if the New Note was in default. The Plaintiffs' breach of contract claim based on a split of the Note and the Deed of Trust is **DISMISSED with prejudice** as a matter of law.[25]

### 2. Waiver

Plaintiffs aver that Defendants breached the New Deed of Trust and waived their right to accelerate the New Note and foreclose on the Property by: (1) splitting the New Note and Deed of Trust, (2) refusing to accept Plaintiffs' payments, and (3) acting inconsistently and inequitably during the loan modification process. The Court has rejected the first argument. Plaintiffs acknowledge they were unable to bring payments on their loan current, and that no Defendant accepted as sufficient their tender of three fifths of the overdue amounts. The New Deed of Trust states the following:

> The Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future.[26]

Under such terms, BAC could, as it did, legitimately refuse Plaintiffs' partial payments. Further, the conduct of Defendants alleged by Plaintiffs during loan modification consideration does not

---

[25] This holding is consistent with that of other courts in this district and other districts in the Fifth Circuit. *See, e.g.*, *Wigginton v. Bank of New York Mellon*, No. 3:10-cv-2128-G, 2011 WL 2669071, at *2 n.2 (N.D. Tex. July 7, 2011) ("[Plaintiff] argues that this assignment caused the note and deed to split, rendering the loan wholly unenforceable . . ., but she has not cited, and the court has not found, any authority to support this proposition."); *Voth v. Federal Nat. Mortg. Ass'n*, No. 3:10-cv-2116-G-BD, 2011 WL 1897759, at *2 (N.D. Tex. Apr. 22, 2011) (holding that MERS, as beneficiary of the Note and Deed of Trust, assigned the Note and Deed to BAC, which then had authority to foreclose), *accepted* 2011 WL 1897271(N.D. Tex. May 18, 2011); *Eskridge v. Fed. Home Loan Mortgage Corp. et al.*, No. 6:10–CV–00285–WSS, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011) (holding the "split" between the note and deed of trust did not prevent MERS, the beneficiary of the Deed of Trust, from assigning its interest to BAC, which then foreclosed on the property); *Richardson v. CitiMortgage, Inc.*, No. 6:10-cv-119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010) (citing *Athey v. MERS*, 314 S.W.3d 161, 166 (Tex. App.—Eastland 2010, pet. denied) ("Under Texas law, where a deed of trust, as here, expressly provides for MERS to have the power of sale, then MERS has the power of sale. . . .MERS had the authority to transfer the rights and interests in the Deed of Trust to CitiMortgage.")).
[26] Defs.' App. 5.

constitute a waiver of the right to accelerate and foreclose if their loan modification application not granted. Plaintiffs had no contractual right to prevent foreclosure unless the Defendants agreed to modify the loan terms. Although Plaintiffs allege in their Original Petition that Defendants repeatedly requested documents Plaintiffs had already submitted, even if those allegations are accepted as true, they do not allege Defendants ever agreed to a modification of the terms of the New Note. Thus, Plaintiffs cannot prevail on their breach of contract claims based upon a waiver by Defendants and those claims are **DISMISSED with prejudice**.

However, Plaintiffs allege that BOA told them to ignore foreclosure letters since BOA did not foreclose while considering loan modification applications. Plaintiffs allege they responded to BOA and BAC's letter of December 9, 2010, which requested additional documents needed for a trial modification. Plaintiffs state they confirmed with BOA that it had received the requested documents and also resent the documents to BOA. Without further contacting Plaintiffs after the December 9, 2010 letter, Defendants foreclosed on the home on February 1, 2011. Taking Plaintiffs' version of the facts as true, Plaintiffs state a claim for breach of contract. Defendants represented to Plaintiffs that they would not foreclose during the loan modification process—but they did. Therefore, since Defendants foreclosed during the loan modification process without contacting Plaintiffs to inform them that their trial modification had been rejected, Plaintiffs state a claim for breach of contract.

### 3. Anticipatory Breach

In Texas, to prevail on a claim for anticipatory breach, a plaintiff must establish: (1) an absolute repudiation of the obligation; (2) a lack of just excuse for the repudiation; and (3)

damage to the nonrepudiating party.[27] An anticipatory repudiation of a contract may be based on either words or actions by a party that indicate an intention not to perform the contract according to its terms.[28] The declaration of intent to abandon the obligation must be in positive and unconditional terms.[29] It is not sufficient if a party makes a genuine mistake or evidences a misunderstanding as to matters of fact or law that causes that party not to satisfy its obligations. Instead, the party committing an anticipatory breach must recognize its duties, but refuse to perform them.[30]

The Plaintiffs' allegations regarding anticipatory breach are difficult to understand. A section of the Petition is titled, "Breach of Contract and Anticipatory Breach of Contract," but it simply states, "The breach of contract and the anticipatory breach of the contract, as set forth above were a proximate cause of Plaintiffs' damages as set forth below."[31]

In their Response Brief, Plaintiffs purport to clarify their Petition, alleging that Defendants repudiated their contractual obligations under the Deed of Trust by attempting to accelerate the Note and foreclose, without providing proper notices as required under the Deed of Trust, and by not approving a loan modification. Even assuming Defendants did not provide required notices, that could render a foreclosure improper, but it would not constitute words or actions positively and unconditionally demonstrating an intent to abandon their obligations under the New Deed of Trust. Even when viewed in the light most favorable to Plaintiffs, the facts about a possible loan modification demonstrate that, at worst, Defendants gave conflicting messages to Plaintiffs. Those inconsistencies fall short of the positive and unconditional

---

[27] *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004) (citing *Taylor Pub. Co. v. Sys. Mktg. Inc.*, 686 S.W.2d 213, 217 (Tex. App.—Dallas 1984, writ ref'd n.r.e)).
[28] *Builders Sand, Inc. v. Turtur,* 678 S.W.2d 115, 120 (Tex. App.—Houston [14th Dist.] 1984, no writ).
[29] *Preston v. Love*, 240 S.W.2d 486, 487 (Tex. Civ. App.--Austin 1951, no writ) (citing *Kilgore v. Nw. Tex. Baptist Educ. Soc.*, 90 Tex. 139, 37 S.W. 598, 600 (1896)).
[30] *Id.*
[31] Original Pet. ¶34.

repudiation that is necessary to support a claim of anticipatory breach. Therefore, Plaintiffs' anticipatory breach of contract claim is **DISMISSED with prejudice**.

### C. TDCPA

Plaintiffs allege BAC and/or BOA violated various provisions of the Texas Debt Collection Practices Act ("TDCPA"),[32] including threatening to take an action prohibited by law;[33] collecting or attempting to collect charges not expressly authorized by the agreement;[34] misrepresenting the character, extent, or amount of a consumer debt;[35] and using a deceptive means to collect a debt.[36] In support of these allegations, Plaintiffs allege Defendants misrepresented the amounts allegedly owed by Plaintiffs under the Note, wrongfully accelerated the Note and foreclosed on the Property, and imposed wrongful charges on Plaintiffs.

Defendants maintain that these claims must be dismissed because foreclosure is not a "debt collection" under the TDCPA. While the Texas Supreme Court has not addressed whether the act of foreclosure is a debt collection under the TDCPA, intermediate Texas appellate courts and federal district courts in the Fifth Circuit have held that acts relating to foreclosing on real property can violate the TDCPA.[37] The Court agrees with those holdings. Further, the TDCPA provides a specific exemption for a "person servicing or collecting real property first lien mortgage loans."[38] By specifically carving out mortgage loan servicers from one specific section

---

[32] Tex. Fin. Code § 392.001 *et seq.*
[33] *Id.* § 392.301(a)(8).
[34] *Id.* § 392.303(a)(2).
[35] *Id.* § 392.304(a)(8).
[36] *Id.* § 392.304(a)(19).
[37] *See Rey v. Acosta*, 860 S.W.2d 654, 659 (Tex. App. 1993, no writ) ("Wrongful acceleration of a real estate note, as occurred here, violates the Texas Debt Collection Practices Act and the Deceptive Trade Practices Act as a matter of law."). *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 732 (N.D. Tex. 2011) ("Based on the statutory definitions and the status of Texas case law, the court makes an *Erie*-guess that the TDCPA can apply to actions taken in foreclosing on real property."); *Akintunji v. Chase Home Finance, LLC*, No. H-11-389, 2011 WL 2470709, at *3 (S.D. Tex. June 20, 2011) ("Unlike the FDCPA, the TDCPA encompasses foreclosure activities by mortgage holders.") (citing *Biggers*).
[38] Tex. Fin. Code § 392.304(b).

of the TDCPA, the statute implicitly acknowledges that the remaining provisions apply to collection of mortgage loans through foreclosure.

Defendants argue that each of Plaintiffs' TDCPA claims are insufficiently pled and do not put Defendants on fair notice of their claims.  Section 392.301(a)(8) of the TDCPA prohibits a debt collector from using threats, coercion, or attempts to coerce by threatening to take an action prohibited by law.  Plaintiffs do not allege why Defendants were prohibited by law from foreclosing and selling the Property, nor how Defendants used threats or coercion.  Further, the TDCPA "does not prevent a debt collector from. . . .exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings."[39]  Because Plaintiffs' claims under Section 392.301(a)(8) are not sufficiently pled to put Defendants on notice of their claims, they are **DISMISSED without prejudice**.

Under section 392.303(a)(2) of the TDCPA, a debt collector may not collect or attempt to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.  Plaintiffs merely state a conclusory assertion that Defendants imposed wrongful charges on Plaintiffs' mortgage account.[40]  Such an allegation is insufficient to put Defendants on fair notice of Plaintiffs' claims.  Therefore, Plaintiffs' claims under § 392.303(a)(2) are **DISMISSED without prejudic**e.

Section 392.304(a)(8) of the TDCPA prohibits a debt collector from using a fraudulent, deceptive, or misleading representation that misrepresents the character, extent, or amount of a consumer debt, or misrepresents a consumer debt's status in a judicial or governmental proceeding.  Plaintiffs maintain that Defendants violated this provision by refusing to accept

---

[39] Tex. Fin. Code § 392.301(b)(3).
[40] Original Pet. ¶39.

Plaintiffs' loan payments, and that Defendant BOA wrongfully instructed Plaintiffs not to make loan payments during the loan modification process, which allegedly forced Plaintiffs further into default. Even if such actions were misleading, they do not misrepresent the character, extent, or amount of the debt. Therefore, such claims are **DISMISSED with prejudice**.

Section 392.304(a)(19) prohibits a debt collector, in debt collection or obtaining information concerning a consumer, from using a fraudulent, deceptive, or misleading representation or deceptive means to collect a debt or obtain information concerning a consumer. Plaintiffs allege BOA representatives informed Plaintiffs they had provided the required documents and that it would not foreclose during the loan modification process, that BOA and/or BAC repeatedly required documents Plaintiffs already provided, and that BAC foreclosed on the Property during the loan modification process, despite representations that it would not, because Plaintiffs allegedly did not provide documents Plaintiffs claim they provided. The Court finds that such facts state a claim under TDCPA § 392.304(a)(19), and Defendants' Motion to Dismiss this claim under that section of the TDCPA is thus **DENIED**.

**D. DTPA**

Plaintiffs allege that the violations of the TDCPA also constitute deceptive trade practices under the Texas Deceptive Trade Practices Act ("DTPA").[41] To pursue a DTPA cause of action, a plaintiff must be a "consumer,"[42] that is, a person who seeks or acquires goods or services by purchase or lease that form the basis of the complaint.[43] A plaintiff claiming a DTPA violation

---

[41] Tex. Bus. & Comm. Code § 17.50(h); Tex. Fin. Code § 392.404 ("A violation of this chapter is a deceptive trade practice under [the DTPA].").
[42] See Tex. Bus. & Com. Code Ann. § 17.50(a) (Vernon Supp. 2008).
[43] *Bohls v. Oakes*, 75 S.W.3d 473, 479(Tex. App—San Antonio 2002, pet. denied); Tex. Bus. & Com. Code Ann. § 17.45(4).

through a tie-in statute, such as the TDCPA, must still be a "consumer" under the DTPA.[44] Although one who borrows money to buy a house can be a consumer under the DTPA because that person's objective is to buy a home,[45] "subsequent actions related to mortgage accounts—for example, extensions of further credit or modifications of the original loan—do not satisfy the 'goods or services' element of the DTPA."[46] Plaintiffs are not consumers vis-à-vis their claim against Defendants. Their DTPA claim is thus **DISMISSED with prejudice**.

### E.  Unreasonable Collection Efforts

A claim for unreasonable collection efforts under Texas law seemingly requires a course of harassment that is willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.[47] Plaintiffs state that BAC and/or BOA "slandered" and "defamed" their credit, and unreasonably exposed them to ridicule. Plaintiffs also allege they were led to believe that Defendants would not foreclose during the loan modification process and they were not given proper notice of the foreclosure sale. Taking Plaintiffs' allegations as true, Defendants' actions that may have misled Plaintiffs do not constitute a willful course of harassment intended to inflict mental anguish and bodily harm.

---

[44] *Hicks v. Chase Home Finance LLC*, No. 3:09-cv-1652-G, 2010 WL 4274745, at *5 (N.D. Tex. Oct. 21, 2010)(citing *Hansberger v. EMG Mortg. Corp.*, No. 04-08-0438, 2009 WL 2264996, at *2 (Tex. App.—San Antonio 2009, pet. denied)).
[45] *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566-67 (Tex. 1984).
[46] *Broyles v. Chase Home Finance*, No. 3:10–CV–2256–G, 2011 WL 1428904 (N.D. Tex. April 13, 2011). *See also Hansberger,* 2009 WL 2264996, at *2 (holding that the services provided "served no purpose other than to facilitate a mortgage loan acquired from another lender, and therefore, were not, as a matter of law, a 'good' or 'service' contemplated by the DTPA.); *Maginn v. Norwest Mortgage, Inc.,* 919 S.W.2d 164, 167 (Tex. App.—Austin 1996, no pet.) (holding that because "Norwest's ancillary services served no purpose apart from facilitating a mortgage loan ... any services provided by Norwest were, as a matter of law, incidental to the contemplated mortgage loan; they were not an objective of the transaction ... [therefore] appellants were not consumers for purposes of the DTPA.").
[47] *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-cv-370, 2010 WL 1026968, at *8 (E.D. Tex. Feb. 16, 2010); *B.F. Jackson, Inc. v. CoStar Realty Information, Inc.*, No. H-08-3244, 2009 WL 1812922, at *5 (S.D. Tex. May 20, 2009); *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.).

Plaintiffs attempt to define unreasonable collection efforts as merely "efforts which an ordinary person of ordinary prudence in the exercise of ordinary care on his or her part would not have exercised under the same or similar circumstances."[48] The language upon which Plaintiffs rely in so claiming is a single jury instruction. The Court declines to adopt that definition of unreasonable collection, and instead requires, as have numerous other courts, a willful course of harassment. Plaintiffs' allegations do not state a claim for that type of unreasonable collection efforts, and that claim is thus **DISMISSED with prejudice**.

### F. Negligent Misrepresentation

Under Texas law, to state a claim for negligent misrepresentation, a plaintiff must allege that: (1) the representation is made by a defendant in the course of its business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in its business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.[49]

One issue here is whether BAC and/or BOA made a statement of existing fact, not a promise of future conduct.[50] Plaintiffs allege that BAC and/or BOA stated that they had received all of the financial documents requested from Plaintiffs, were reviewing that information, and would not foreclose during the loan modification process.[51] Plaintiffs claim BAC and/or BOA denied the loan modification for failure of Plaintiffs to submit financial information, which

---

[48] *Employee Finance Co. v. Lathram*, 363 S.W.2d 899, 901 (Tex. Civ. App.—Fort Worth 1962) aff'd in part, rev'd in part on other grounds, 369 S.W.2d 927 (Tex. 1963).
[49] *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).
[50] *Allied Vista Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, no pet.).
[51] Original Pet. ¶18.

Plaintiffs claim they had provided, and then foreclosed. If the Defendants stated they had not received information already provided to them, they made a false statement of existing fact.

To recover damages for negligent misrepresentation, Plaintiffs' damages must be separate from their damages for breach of contract.[52] Plaintiffs provide general allegations of damages for the stigma of foreclosure, loss of creditworthiness, mental anguish, and value of time lost in attempting to correct Defendants' records. However, Plaintiffs do not plead what actual damages they seek, separate from the claims for breach of contract, for the alleged negligent misrepresentation. Plaintiffs have not sufficiently alleged recoverable damages separate from the contract, and therefore that claim is **DISMISSED without prejudice**.

### G. Gross Negligence

Plaintiffs' claim of gross negligence is based on their negligent misrepresentation and unreasonable collection efforts claims. Since Plaintiffs' claims for negligent misrepresentation and unreasonable collection efforts are being dismissed, Plaintiffs do not state a claim for gross negligence. Therefore, Plaintiffs' gross negligence claim based on unreasonable collection efforts is **DISMISSED with prejudice.** Plaintiffs' gross negligence claim based on negligent misrepresentation is **DISMISSED without prejudice.**

---

[52] *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). *See also* Restatement (Second) of Torts § 552B (1977). The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation. The damages recoverable for a negligent misrepresentation do not include the benefit of a plaintiff's contract with the defendant.

**H. Quiet Title & Trespass to Try Title**

Trespass to try title suits provide a procedure under the Texas Property Code "by which rival claims to title or right of possession may be adjudicated."[53] A suit to quiet title is an equitable action that clears a title of an invalid charge against the title. To prevail in a trespass to try title action, a plaintiff must prove title to the disputed property by: "(1) proving a regular chain of conveyances from the sovereign, (2) establishing superior title out of a common source, (3) proving title by limitations, or (4) proving title by prior possession coupled with proof that possession was not abandoned."[54] Plaintiffs have not properly pled any of those elements. Plaintiffs attempt to establish superior title out of a common source, but claim only that they have superior title because BAC did not have a right to foreclose on the property and the trustee's sale was thus void. As discussed above, MERS had the right to transfer its interests to BAC, which sold the property at foreclosure to Freddie Mac. Defendants have provided the Substitute Trustee's Deed that shows Freddie Mac purchased the property in a foreclosure sale.

Furthermore, in a quiet title action, Plaintiffs must prove and recover on the strength of their own title, not the weakness of Freddie Mac's title. Plaintiffs do not allege facts that would permit them to recover on the strength of their own title, and cannot demonstrate an invalid charge against the title unless they prevail on their remaining contract claim. As discussed above, Plaintiffs cannot prevail on their wrongful foreclosure theory based upon the splitting of the Note and Deed of Trust. Therefore, Plaintiffs' trespass to try title and quiet title claims are **DISMISSED without prejudice**. Plaintiffs may replead their trespass to try title and quiet title claims based upon the remaining breach of contract claim.

---

[53] Tex. Prop. Code Ann. § 22.01; *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994); *Yoast v. Yoast*, 649 S.W.2d 289, 292 (Tex. 1983).
[54] *Caress v. Lira,* 330 S.W.3d 363, 364 (Tex. App.—San Antonio 2010, pet. denied) (citing *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004)).

**I.   Declaratory Judgment**

Plaintiffs argue that the Court should enter declaratory judgment in its favor. Defendants claim that Plaintiffs are not entitled to declaratory relief since their other causes of action lack merit. Plaintiff's request for declaratory judgment is redundant, and the Court declines to consider it. *See Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 636 (N.D. Tex. 2010) *citing Kougl v. Xspedius Mgmt. Co. of DFW, LLC,* No. 3:04–cv–2518–D, 2005 WL 1421446, at *4 (N.D. Tex. 2005)(dismissing as redundant a declaratory judgment claim seeking contract interpretation that would be resolved as part of a breach of contract action). Therefore, Plaintiffs' request for declaratory judgment is **DISMISSED with prejudice**.

**IV.   CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**. The Motion to Dismiss is **DENIED** as to Plaintiffs' claim under TDCPA § 392.304(a)(19). Plaintiffs' claims for breach of contract based on Defendants' waiver and split between the Note and Deed of Trust, anticipatory breach of contract, TDCPA § 392.304(a)(8), DTPA, unreasonable collection efforts, gross negligence based on unreasonable collection efforts, and declaratory judgment are **DISMISSED with prejudice**. Plaintiffs' TDCPA claims under sections 392.301(a)(8) and 392.303(a)(2), claims for negligent misrepresentation, quiet title and trespass to try title, and gross negligence based on negligent misrepresentation are **DISMISSED without prejudice**, subject to repleading within 30 days of the date of this Order. Plaintiffs shall file a clean and redlined version of the Amended Complaint, the latter showing all changes in the Original Petition.

**SO ORDERED.**

January 20, 2012.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS